# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA JOLLA FRIENDS OF THE SEALS, a nonprofit organization; and JAMES H.N. HUDNALL, JR., an individual,<br><br>                                    Plaintiffs,<br>   vs.<br>NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION NATIONAL MARINE FISHERIES SERVICE ("NMFS"), an agency of the U.S. Dept. of Commerce; CARLOS M. GUTIERREZ, Secretary of Commerce; JAMES W. BALSIGER, Acting Director of NMFS; RODNEY MCINNIS, Acting Regional Administrator of NMFS; JAMES LECKY, Director of Office of Protected Resources at NMFS; City of San Diego; and Does 1 to 100,<br><br>                                    Defendants. | CASE NO. 08cv1847 WQH (POR)<br><br>ORDER |

HAYES, Judge:

   The matter before the Court is Plaintiffs' application for a temporary restraining order requiring the Defendant City of San Diego to follow two resolutions of its City Council by placing a guideline pupping season rope at the Children's Pool beach in La Jolla, California. (Doc. # 27).

## PROCEDURAL BACKGROUND

   On October 9, 2008, Plaintiffs filed a Complaint against the Defendant City of San Diego, and Defendants National Oceanic and Atmospheric Administration National Fisheries

Service (NOAA) and other federal officials ("Federal Defendants"). The Complaint asserts jurisdiction over this action pursuant to 28 U.S.C. § 1331 and alleges the following two claims for relief: 1) writ of mandate against Defendant City of San Diego requiring resolution of a substantial question of federal law; and 2) judicial review of agency action under 5 USC § 702 to prevent NOAA from ceding its authority to the City to interpret and apply the Marine Mammal Protection Act ("MMPA"). The Complaint seek a judgment from this Court: 1) for injunctive relief requiring an MMPA permit to be issued prior to NMFS officials allowing the disturbance of seals at Children's Pool Beach; 2) for injunctive relief requiring Defendant City of San Diego to carry out the ordinance of its City Council and erect a pupping season rope this year as usual from December 1 through May 30; and 3) for a declaration of the rights and duties of Plaintiffs and Defendants. (Complaint, Doc. # 1 at 18).

On October 10, 2008, Plaintiffs filed an application for a temporary restraining order and a preliminary injunction which included the following two requests: 1) "prevent [National Marine Fisheries Service] and its officials from allowing the City of San Diego to be forced . . . by a state court to destroy a harbor seal rookery, where approximately 200 seals rest, give birth, and nurse their young, without obtaining a permit under the Marine Mammal Protection Act, 16 USCS §§ 1361-1407" and 2) "require the City of San Diego to comply with two resolutions of its City Council requiring installation of a pupping season guideline rope at the rookery to prevent nursing seal pups from being separated from their mothers and to protect the public from being bitten by a seal protecting her young." (Application for a Temporary Restraining Order, Doc. # 3 at 2).

On October 22, 2008, this Court held a hearing with all parties present in order to set a briefing schedule and hearing date on Plaintiffs' application for temporary restraining order and preliminary injunction. The Court set a hearing date of November 25, 2008 on Plaintiffs' pending motion for a preliminary injunction and Plaintiffs requested that the Court enter a temporary restraining order to require the Defendant City of San Diego to prevent the imminent destruction of the harbor seal rookery at the Children's Pool beach and to require compliance with a City Council resolution to place a guideline rope barrier at the Children's

1  Pool beach until the date set for the hearing on Plaintiffs' motion for a preliminary injunction.

2  Defendant City of San Diego represented to this Court at this hearing that Plaintiffs
3  were likely to succeed on the merits of the claim that a permit under the MMPA is required
4  before the seals can be dispersed, and that the City of San Diego was likely to be required by
5  the state court to immediately remove the seals constituting irreparable injury. Counsel for the
6  Defendant City of San Diego stated at the hearing "Plaintiff is likely to succeed in Plaintiff's
7  argument that the City would need a permit, certainly, right before pupping season is scheduled
8  to occur at Children's Pool and, certainly, during the pupping season because we're dealing
9  with an entire colony of seals. And for that reason, ... it is the City's position that there is no
10 opposition to the request for a temporary restraining order." (Transcript page 16). Counsel
11 for the Defendant City of San Diego stated at the hearing  "we don't see how there is any
12 irreparable harm to any of the parties if there is a temporary restraining order preserving the
13 status quo because it's just a matter of giving the court an opportunity to look into the merits;
14 whereas, if the seals were immediately removed, there would be irreparable harm. And we
15 know that based on the declaration from the biologist from NOAA about how these seals at
16 this particular juncture, the pregnant ones would likely have miscarriages." (Transcript at page
17 7-8). Defendant City of San Diego stated that the "part of the request that deals with the rope
18 area . . . is premature." (Transcript page 12).

19 In an order filed on October 22, 2008, the Court found that "serious questions going to
20 the merits are raised and the balance of hardships tips sharply in favor of the moving party."
21 (Doc. #11 at 2). This Court entered an order "to preserve the status quo and prevent
22 irreparable harm before a preliminary injunction hearing may be held." *Id*. The Court ordered
23 "that Defendant City of San Diego, its agents, servants, employees, and representatives, and
24 all persons acting in concert or participating with them, are hereby enjoined and restrained
25 through the hearing date of November 25, 2008 from engaging in, committing, or performing,
26 directly or indirectly, any and all of the following acts: harassing or dispersing the colony of
27 harbor seals at Children's Pool Beach in La Jolla, California." *Id*.

28 On November 4, 2008, the Defendant City of San Diego filed a "Statement of Non-

1 Opposition to Plaintiffs' Motion for a Preliminary Injunction." (Doc. # 18). Defendant City of San Diego stated: "Based upon the [Marine Mammal Protection Act's] text and legislative history, the Plaintiffs are likely to succeed on the merits." (Doc. # 18 at 4). Defendant City of San Diego stated that "the primary issue is: Are the Plaintiffs likely to succeed on the merits in their argument that the City must obtain an incidental harassment permit in compliance with the Marine Mammal Protection Act of 1972, 16 U.S.C. §§ 1361-1407 ("MMPA") before removing the seal colony from the Children's Pool?" (Doc # 18 at 2). Defendant City of San Diego stated that "the fact that the Children's Pool is a seal rookery removes all doubt that a permit is required" and that "Plaintiffs are likely to succeed on the merits." (Doc. # 18 at 4). Defendant City of San Diego further represented that there "is sufficient evidence of a threat of irreparable injury sufficient to authorize a preliminary injunction to preserve the status quo." (Doc. # 18 at 5).

On November 13, 2008, all parties filed a "Joint motion to continue the hearing date of November 25, 2008 on the Plaintiffs' motion for temporary restraining order/preliminary injunction." (Doc. # 25). The parties stated that "the purpose of the continuance is to allow the parties to explore the possibility of settlement of this matter . . . Plaintiffs and the City are in agreement that this Court's temporary restraining order of October 22, 2008 should remain in effect . . . [and] this joint motion is without prejudice to Plaintiffs filing a motion to amend the TRO or seeking other relief against the City so that the City is ordered to install a rope barrier at the Children's Pool in La Jolla during the upcoming harbor seal pupping season." (Doc. # 25 at 2). Plaintiffs' motion for preliminary injunction was reset to February 13, 2009.

On December 2, 2008, Plaintiffs filed the application now before this Court for a temporary restraining order requiring the Defendant City of San Diego to enforce its existing resolutions and install a pupping season guideline rope at the Children's Pool Beach by December 15 to prevent nursing seal pups from being separated from their mothers and to protect the public from being bitten by a seal protecting her young. (Doc. # 27).

On December 8, 2008, Defendant City of San Diego filed a response to Plaintiffs' application for a temporary restraining order stating that state court has entered a judgment

1  finding that the "city violated the Trust by constructively closing the beach to the public by
2  placement of a rope at the Children's Pool" and that "[t]he City is [] obligated to comply with
3  the Superior Court's order by not installing a rope barrier during the pupping season
4  notwithstanding the two San Diego City Council resolutions in question." (Doc. # 30 at 2-3).

5  On December 8, 2008, the Federal Defendants filed a response to Plaintiffs' application
6  for a temporary restraining order stating in part: "On several occasions, NMFS has advised the
7  City to install a guideline rope barrier at Children's Pool Beach during the pupping season to
8  discourage members of the public from harassing seals in violation of the MMPA. . . . NMFS's
9  recommendation remains valid and applies to the 2008-2009 pupping season.  However,
10  because Plaintiffs TRO Application does not seek any relief against NMFS, nor is it premised
11  on any claims against NMFS, NMFS takes no position on whether the Plaintiffs have stated
12  a claim against the City for 'a writ of mandate under Cal. Code Civ. Proc. § 1085(a),' . . . that
13  is justiciable in federal court."  (Doc. # 29 at 1).

14  On December 12, 2008, this Court held a hearing on Plaintiffs' application for
15  temporary restraining order.  All parties appeared.

## BACKGROUND FACTS

17  State Court Action

18  On March 12, 2004, Valerie O'Sullivan, a private citizen, filed an action in Superior
19  Court of San Diego County against the City of San Diego alleging causes of action for breach
20  of trust and breach of fiduciary duties.  *O'Sullivan v. City of San Diego*, No. GIC 826918 (Cal.
21  Sup. Ct.).  O'Sullivan sought declaratory relief that the City had breached its trust and
22  fiduciary obligations under its grant of trust to maintain the Children's Pool beach in La Jolla,
23  California in a manner suitable for its intended uses and purposes as a public park and bathing
24  pool for children.

25  On August 26, 2005, Superior Court Judge William C. Pate entered a "Final Statement
26  of Decision" finding in favor of O'Sullivan and against the Defendant City of San Diego on
27  her claim of breach of trust and her claim for breach of fiduciary duty.  The state court decision
28  concluded that Children's Pool beach is a "man-made, artificial condition, which was entrusted

1  to the City for specific uses and purposes" and that "the City has knowingly declined to
2  remove sand from the Pool, even though the sand has reached the point where the Pool in
3  reality cannot be used for its intended purpose."  (Doc. #30, Final Statement of Decision,
4  Exhibit 2 at 30).   The state court decision stated that the City breached its obligations under
5  the Trust by its "decision to erect a rope barrier cutting off public access to the Pool." *Id.* at
6  24.  The state court decision ordered the City  to employ all reasonable means to restore the
7  Children's Pool to its 1941 condition by removing the sand build-up and further to reduce the
8  level of water contamination in the Pool to levels certified by the County of San Diego as
9  being safe for humans.  The state court decision further stated that "[n]othing contained in this
10 order shall be construed as requiring the City to violate any law, rule or regulation of any
11 federal, state or county government." *Id.* at 31.

12  On October 4, 2005, the state court entered a Judgment in part as follows: "Defendant
13 City of San Diego is ordered to employ all reasonable means to restore the Children's Pool to
14 its 1941 condition by removing the sand build-up and further to reduce the level of water
15 contamination in the Children's Pool to levels certified by the County of San Diego as being
16 safe for humans." (Doc. # 30, Judgment, Exhibit 2 at 2).  The Judgment was stayed pending
17 appeal by the Defendant City of San Diego.

18  On September 7, 2007, the California Court of Appeals affirmed the decision of the
19 state court.  The Judgment was no longer stayed and the City became obligated to comply with
20 the Judgment issued by the Superior Court.

21  On December 11, 2007, the City of San Diego filed a motion in the Superior Court to
22 clarify the injunction in the state court case.  The City sought "clarification from the Court on
23 whether the injunction in this case enjoins the City from placing a rope barrier at the Children's
24 Pool Beach in accordance with City Council Resolution No. 302160."  (Doc. # 30, Defendant
25 City of San Diego's Motion to Clarify Injunction, Exhibit 8).  The City of San Diego informed
26 the state court that the City staff is making the arrangements to secure the necessary state and
27 federal permits so that the court ordered dredging can proceed.  The City of San Diego asserted
28 that it was not enjoined from installing the rope barrier before dredging commenced in order

"to protect pregnant harbor seals and their pups during breeding season and deter citizens from violating the federal MMPA." *Id.* at 3. After Plaintiffs filed an opposition to the City's motion to clarify, the City filed a reply asserting that the state court Judgment should not be "construed to require the City to violate its duty under federal law to protect the seals during pupping season." (Doc. #30, Defendant City of San Diego's Reply, Exhibit 9 at 4).

On January 4, 2008, the state court denied the motion to clarify the injunction. (Doc. #30, Exhibit 10). The state court referred back to the "Tentative Statement of Decision" filed on August 25, 2005 in which the state court judge stated that the City breached its obligations under the Trust by the actual or constructive closure of the Children's Pool when it decided "to erect a rope barrier cutting off public access to the Pool." (Doc. #21, Declaration of McArdle, Exhibit 3 at 61).

City Resolutions

Beginning as early as March of 2006, officials from the National Marine Fisheries Service, the federal agency charged with enforcement of the Marine Mammal Protection Act "strongly recommended" that the City of San Diego close the Children's Pool beach during pupping season. (Doc. #1, Exhibit A). On March 21, 2006, Special Agent Donald Masters of the National Marine Fisheries Service wrote a letter to the San Diego Mayor addressing steps the City needed to take to protect the marine mammals at the Children's Pool and the people in the community. The letter stated that "in the past few months, there have been numerous calls and other communications to NOAA's Office for Law Enforcement regarding incidents of marine mammal harassment by the public at the Children's Pool Beach in La Jolla, California." *Id*. Special Agent Masters on behalf of the National Marine Fisheries Service stated:

> [NOAA's Office for Law Enforcement] is concerned that the public will continue to harass mammals and continue to be subject to citation under the MMPA at CPB. Therefore, we strongly recommended . . . that the City close the Children's Pool Beach during the remainder of pupping season (through the end of April). . . . In the event you decide against a temporary closing of the beach . . . consider reinstating the rope barrier that was once in place. . . .The rope barrier will provide a clear message for those that have a sincere desire to respect the marine mammals present on the beach and . . . will provide some level of heightened protection for the adult and newborn seals. The rope barrier will also aid in informing humans when they are more likely to be found in

violation of the MMPA and potentially cited.

*Id.*

On April 19, 2006, the San Diego City Council enacted Resolution 301368 which states in part

> Whereas, on March 21, 2006, the National Oceanic and Atmospheric Agency (NOAA), the federal agency charged with protecting marine mammals under the Marine Mammal Protection Act, requested that the City of San Diego either temporarily close the Children's Pool beach through the end of April or replace the rope barrier that was once in place at the Children's Pool beach. NOAA expressed concerns that despite having placed two of its signs on the beach warning the public to keep a safe distance from hauled out seals, the signs have not prevented actions that could be considered harassment from occurring at the beach, particularly during pupping season.
> . . .
> BE IT RESOLVED, by the Council of the City of San Diego that the rope barrier at the Children's Pool beach will be reinstated for the remainder of this year's pupping season and will be placed at the beach from January 1 through May 1 every year from this point forward.

(Doc. #1, Exhibit B at 3).

On January 8, 2007, San Diego City Council enacted Resolution 302160 which states that the Mayor or his designee is "authorized to extend the period of placement of the rope barrier at the Children's Pool from December 15th through May 15th annually, and City staff is directed to replace the rope barrier as soon as possible within the time line." (Doc. #1, Exhibit C at 2).

On November 30, 2007, the Office of Law Enforcement of the NOAA Fisheries Service wrote to the City of Dan Diego stating "OLE is concerned that the public will continue to harass marine mammals and continue to be subject to citation under the MMPA at CPB. Therefore, we strongly recommend, that the City close the CPB starting December 15 through May 30, or at a minimum, consider reinstating the CPB rope barrier that was once in place." (Doc. #1, Exhibit D).

Prior Federal Court Action

On December 11, 2007, the Animal Protection and Rescue League brought an action in this federal court against the State of California and the City of San Diego asserting that the Marine Mammal Protection Act preempts enforcement of the state court's order requiring the

1    City to scare the seals away from Children's Pool beach without first applying for a permit
2    under the Marine Mammal Protection Act. *Animal Protection and Rescue League v. State of*
3    *California, et.al.,* Civil No. 07CV2320JM. The Complaint requested an injunction requiring
4    the City to comply with the City Council resolutions and install the pupping season rope in
5    order to comply with federal law.

6    On December 18, 2007, the Animal Protection and Rescue League moved for temporary
7    restraining order "to compel Defendants to install a rope barrier at CPB during seal pupping
8    season." (Doc. #21, Order, Exhibit 2 at 4).

9    On February 4, 2008, the District Court denied Plaintiff's request for a temporary
10   restraining order. *Id.* at 10.

11   On February 27, 2008, the District Court issued an order abstaining from exercising
12   subject matter jurisdiction pursuant to the *Younger* abstention doctrine. The District Court
13   further stated that there was not a private right of action under the Marine Mammal Protection
14   Act and stated that if it had reached the merits of the dispute it would have held that the Marine
15   Mammal Protection Act does not preempt the state law at issue in this action. (Doc. #21,
16   Order, Exhibit 7 at 6). Plaintiffs filed an appeal in the United States Court of Appeals for the
17   Ninth Circuit.

18   On March 10, 2008, the Court of Appeals granted an emergency motion for injunctive
19   relief pending disposition of the appeal staying "[a]pplication of state law or any state court
20   order to prevent placement of a guideline rope in the La Jolla Children's Pool Beach." (Doc.
21   #1, Order, Exhibit F). In this same order, the Court of Appeals invited the United States to file
22   a brief addressing "the issues of abstention, and federal preemption raised by the appeal." *Id.*
23   The United States Department of Justice, Environmental and Natural Resources Division filed
24   a "Brief for the United States as Amicus Curiae Supporting Affirmance" which stated in part
25   as follows:

26   **B. The guideline rope**
     The harassment of seals by the general public, of course, constitutes an
27   unauthorized taking. See 16 U.S.C. § 1362(13). And NOAA has advised the
     City to install a guideline rope during the pupping season to minimize these
28   takings. In light of these circumstances, to the extent the state law prohibits the
     City from adopting this measure, it relates to the taking of seals.

|   |   |
|---|---|
| 1 | |
| 2 | Moreover, the conclusion the that MMPA preempts this aspect of state law is consistent with the statute's underlying objectives. After all, the unauthorized taking of marine mammals is something the MMPA is intended to prevent. See H.R. Rep. No. 92-707 (1972), as reprinted in 1972 U.S.C.C.A.N. 4144. And while installing a guideline rope during the seal pupping season is consistent with this objective, prohibiting a local government from taking such a measure on its own property is not; indeed, such an interpretation of the state law frustrates the MMPA's prohibition on the unauthorized taking of marine mammals, as well as NOAA's efforts to enforce the statute. |

> Moreover, the conclusion the that MMPA preempts this aspect of state law is consistent with the statute's underlying objectives. After all, the unauthorized taking of marine mammals is something the MMPA is intended to prevent. See H.R. Rep. No. 92-707 (1972), as reprinted in 1972 U.S.C.C.A.N. 4144. And while installing a guideline rope during the seal pupping season is consistent with this objective, prohibiting a local government from taking such a measure on its own property is not; indeed, such an interpretation of the state law frustrates the MMPA's prohibition on the unauthorized taking of marine mammals, as well as NOAA's efforts to enforce the statute.
>
> Furthermore, section 109(h) is inapposite to the installation of a guideline rope. The state law's prohibition against installation of a guideline rope does not itself require or result in the taking of a marine mammal by government officials, and the purpose of this prohibition is not to protect marine mammals, to protect public health or welfare, or to remove nuisance animals. **The MMPA thus expressly preempts the state law to the extent it prohibits the City from installing a guideline rope during the pupping season.**

(Doc. #21, Brief for the United States as Amicus Curiae Supporting Affirmance, Exhibit 8 at 22-23). (emphasis added).

On June 17, 2008, the Court of Appeals for the Ninth Circuit dismissed the action filed by the Animal Protection and Rescue League concluding that "[w]e lack federal question jurisdiction. Appellants are not challenging the grant or denial of a permit application under the MMPA. . . . This court does not otherwise have jurisdiction to consider appellants' suit seeking to enforce the terms of the MMPA. *See Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992) ("[T]he MMPA does not provide for citizens to sue to enforce the statute.")." (Doc. #1, Memorandum, Exhibit H at 2).

## CONTENTIONS OF THE PARTIES

Plaintiffs contend that they are likely to succeed on their first claim for a writ of mandate under Cal. Code Civ. Proc. §1085(a) to compel the Defendant City of San Diego to follow its own City Council ordinances and install the rope barrier during the pupping season. Plaintiffs assert that the federal court has jurisdiction over this claim because the claim raises a "substantial question of federal law that must be resolved, in this case whether the MMPA preempts enforcement of a state law disallowing [the] rope barrier." (Doc. #27-2 at 4). Plaintiffs assert that the rope must be installed in order to prevent violations of the MMPA and that the MMPA preempts the state court action disallowing the rope barrier. Plaintiffs assert that "[w]ithout the rope, Plaintiffs will suffer irreparable harm in the form of seeing pregnant

and nursing seals harassed out of the rookery by unwitting tourists who have no idea there is a recommended distance that they stay back from the seals." *Id.* at 1-2.

Defendant City of San Diego stated at the hearing on the application for a temporary restraining order that it does not oppose an order requiring it to comply with its resolutions during the pupping season. Defendant City of San Diego states that "it is obligated to comply with the Superior Court's order by not installing a rope barrier during the pupping season notwithstanding the two San Diego City Council resolutions in question." (Doc. #30 at 3). Based upon the position of federal officials that "[t]he MMPA . . . expressly preempts the state law to the extent it prohibits the City from installing a guideline rope during the pupping season," the Defendant City of San Diego asserts that the temporary restraining order is necessary to resolve the substantial federal question presented by the conflict between the order of the state court and the interpretation of the MMPA by federal officials. (Doc. #21, Exhibit 8 at 22-23).

Federal Defendants state that they take no position as to whether the Plaintiffs have stated a claim against the City for a writ of mandate under Cal. Code Civ. Proc. § 1085(a) justiciable in federal court. Federal Defendants confirm that the "NMFS recommendation [to install a guideline rope barrier at Children's Pool Beach during the pupping season] remains valid and applies to the 2008-2009 pupping season" and that the views expressed in the *Animal Protection and Rescue League* amicus curiae brief were "based upon the information available to the Attorney General at the time and speaks for itself." (Doc. #29 at 2).

## APPLICABLE LAW

The underlying purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm before a preliminary injunction hearing may be held. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006). The standard for issuing a temporary restraining order requires that the party seeking relief show either "(1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips

1  sharply in favor of the moving party." *Immigrant Assistance Project of the L.A. County of*
2  *Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002). "[T]hese two formulations represent
3  two points on a sliding scale in which the required degree of irreparable harm increases as the
4  probability of success decreases." *Dep't Parks & Rec. of Calif. v. Bazaar Del Mundo, Inc.*,
5  448 F.3d 1118, 1123 (9th Cir. 2006) (citations omitted).

## DISCUSSION

7  Plaintiffs assert that this Court has federal question jurisdiction to determine whether
8  the state court action blocking the City of San Diego from complying with its resolutions to
9  place the rope barrier at the Children's Pool during pupping season is preempted by federal
10 law.  Plaintiffs assert that the federal officials have clearly stated that "the MMPA . . .
11 expressly preempts the state law to the extent it prohibits the City from installing a guideline
12 rope during the pupping season" and that this Court should preserve the status quo until this
13 issue of federal law can be decided. (Doc. # 21, Exhibit 8 at 22-23). Defendant City of San
14 Diego has stated that it is not complying with its resolutions because it is "obligated to comply
15 with the Superior Court's order by not installing a rope barrier during the pupping season
16 notwithstanding the two San Diego City Council resolutions." (Doc. # 30 at 3).  Defendant
17 City of San Diego contends that Plaintiffs are likely to prevail on their first claim for relief
18 based upon the assertion of preemption by federal officials. Federal Defendants have expressly
19 stated in the *Animal Protection and Rescue League* amicus curiae brief that "to the extent the
20 state law prohibits the City from adopting [the measure to install a guideline rope during the
21 pupping season], it relates to the taking of seals" and that "[t]he MMPA thus expressly
22 preempts the state law to the extent it prohibits the City from installing a guideline rope during
23 the pupping season." (Doc. #21, Exhibit 8 at 22-23).   In this action, Federal Defendants
24 continue to assert the validity of the "NMFS's recommendation" to install a guideline rope
25 barrier at Children's Pool beach during the pupping season and refer the Court to their position
26 in the prior federal litigation. Federal Defendants state that their views expressed in the *Animal*
27 *Protection and Rescue League* amicus curiae brief "speaks for itself."  (Doc. # 29).
28  The initial issue is whether Plaintiffs' state law claim for a writ of mandate under Cal.

1  Code of Civ. Proc. §1085(a) presents a substantial federal issue over which federal question
2  jurisdiction will lie even where the MMPA does not provide a private right of action. In
3  *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308,
4  125 S.Ct. 2363 (2005), the United States Supreme Court addressed whether a federal cause of
5  action is always required as a condition for exercising federal-question jurisdiction. In *Grable*,
6  the Internal Revenue Service seized real property belonging to Plaintiff Grable to satisfy a
7  federal tax delinquency and gave Defendant Darue a quitclaim deed. Five years later, Grable
8  brought a quiet title action in state court against Darue claiming that the record title was invalid
9  because the IRS had failed to notify Grable of its seizure in the exact manner required by Title
10 26 U.S.C. § 6335(a). Darue removed the state law quiet title action to federal district court.
11 Darue asserted that the action presented a federal question because the claim of title depended
12 on the interpretation of the notice statute in federal tax law. The District Court and the Court
13 of Appeals declined to remand the action to state court finding that the claim posed a
14 "significant question of federal law." 545 U.S. at 311. The United States Supreme Court
15 agreed that federal question jurisdiction was proper even without a federal cause of action and
16 explained that

> Darue was entitled to remove the quiet title action if Grable could have brought it in federal district court originally, 28 U.S.C. § 1441(a), as a civil action "arising under the Constitution, laws, or treaties of the United States," § 1331. This provision for federal-question jurisdiction is invoked by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims arising under 42 U.S.C. § 1983). There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

24 *Id.* at 312. (citations omitted). The Supreme Court held that "the national interest in providing
25 a federal forum for tax litigation is sufficiently substantial to support the exercise of federal-
26 question jurisdiction over disputed issues on removal, which would not distort any division of
27 labor between the state and federal courts, provided or assumed by Congress." *Id.* at 310.
28          The Supremacy Clause unambiguously provides that if there is any conflict between

1  federal law and state law, federal law shall prevail. *Gonzales v. Raich*, 545 U.S. 1, 29, 125
2  S.Ct. 2195 (2005). In this case, the MMPA advances a significant federal interest in the
3  conservation of marine mammals. *See* 16 U.S.C. § 1361(6). The MMPA is intended to protect
4  marine mammals so that they continue "to be a significant functioning element in the
5  ecosystem of which they are a part." *Id.* § 1361(1). The MMPA prohibits "taking" a marine
6  mammal without a permit. *Id.* §§ 1372,1374. The statute defines "taking" as harassing,
7  hunting, capturing, or killing a marine mammal, as well as attempting to do so. *Id*. § 1362(13),
8  (18); 50 C.F.R. § 216.3. The MMPA does not provide for citizens to sue to enforce the statute.
9  *See Didrickson v. U.S. Dep't of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992). However, the
10 MMPA expressly preempts state law stating in part: "[n]o State may enforce, or attempt to
11 enforce, any State law or regulation relating to the taking of any species . . . of marine mammal
12 with in the State unless the Secretary has transferred authority for the conservation and
13 management of that species . . . to the State." 16 U.S.C. § 1379(a).

14       In *Grable*, the Supreme Court recognized that the absence of a private right of action
15 and the presence of a preemption of state remedies clause are evidence of the intention of
16 Congress regarding the exercise of federal question jurisdiction. 545 U.S. at 318. In the case
17 before this Court, the MMPA does not provide for citizens to enforce the statute but expressly
18 preempts state laws which conflict with the provisions of the Act. Federal officials have
19 interpreted the resolutions of the City of San Diego to install a guideline rope during the
20 pupping season to "relate to the taking of seals." Federal officials have further stated that
21 "prohibiting a local government from taking such a measure on its own property is not
22 [consistent with the objectives of the MMPA] and such an interpretation of the state law
23 frustrated the MMPA's prohibition in the unauthorized taking of marine mammals, as well as
24 NOAA's efforts to enforce the statute." (Doc. #21, Exhibit 8). At this stage in the
25 proceedings, the record supports the conclusion that the federal interest in marine mammal
26 conservation presented in this case is sufficiently substantial to support the exercise of federal
27 question jurisdiction over the disputed issue of whether the federal law preempts any state
28 court action prohibiting the City from complying with its resolutions. The MMPA expressly

reserves to federal law all issues relating to the taking of any species of marine mammals. The exercise of federal jurisdiction to determine the requirements of the MMPA would not distort any division of labor between the state or federal court as expressed by Congress. Consistent with this conclusion, the "Final Statement of Decision" filed on August 26, 2005 by Superior Court Judge William C. Pate which the City is obligated to follow specifically states that "[n]othing contained in this order shall be construed as requiring the City to violate any law, rule or regulation of any federal, state or county government." (Doc. # 30 at 31). At this stage in the proceedings, the state law claim for writ of mandate "really and substantially involves a dispute or controversy respecting the validity, construction, or effect of [federal] law." *Grable*, 545 U.S. at 318 quoting *Shilthis v. McDouglas*, 225 U.S. 561, 569, 32 S.Ct. 704 (1912).

The record in this case raises serious questions going to the merits of the first claim for relief that federal law preempts the asserted obligation of the City to comply with the order of the Superior Court "by not installing a rope barrier during the pupping season notwithstanding the two San Diego City Council resolutions in question." (Doc. #30 at 3). The Court concludes that the balance of hardships tips in favor of Plaintiffs in this case. The injury Plaintiffs seek to avoid through an order requiring the Defendant City of San Diego to comply with its own resolutions is serious and irreparable, including physical harm to the public and the marine mammals. The Court will grant Plaintiffs' application for a temporary restraining order requiring the Defendant City of San Diego to follow two resolutions of its City Council by placing a guideline pupping season rope at the Children's Pool beach in order to maintain the status quo until the issues presented in this case can be fully addressed in the Plaintiffs' motion for preliminary injunction set before this Court on February 13, 2009.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' application for a temporary restraining order requiring the Defendant City of San Diego to follow two resolutions of its City Council by placing a guideline pupping season rope at the Children's Pool beach in La Jolla, California (Doc. # 27) is granted.

1   IT IS FURTHER ORDERED that Defendant City of San Diego shall comply with
2 Resolution 301368 and Resolution 312160 until further order of this Court or further action
3 of the City Council.
4 DATED:  December 18, 2008

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge