1
2
3
4
5
6
7 **UNITED STATES DISTRICT COURT**
8 **SOUTHERN DISTRICT OF CALIFORNIA**
9

10 | LA JOLLA FRIENDS OF THE SEALS, a | CASE NO. 08cv1847 WQH (POR)
nonprofit organization; and JAMES H.N.
11 | HUDNALL, JR., an individual, | ORDER

12 |                                                   Plaintiffs,
13 |            vs.

14 | NATIONAL OCEANIC AND
ATMOSPHERIC ADMINISTRATION
15 | NATIONAL MARINE FISHERIES
SERVICE ("NMFS"), an agency of the U.S.
16 | Dept. of Commerce; CARLOS M.
GUTIERREZ, Secretary of Commerce;
17 | JAMES W. BALSIGER, Acting Director of
NMFS; RODNEY MCINNIS, Acting
18 | Regional Administrator of NMFS; JAMES
LECKY, Director of Office of Protected
19 | Resources at NMFS; City of San Diego; and
Does 1 to 100,
20 |                                                   Defendants.

21 HAYES, Judge:

22     The matter before the Court is the motion to dismiss the Complaint for lack of subject

23 matter jurisdiction filed by the Federal Defendants.  (Doc. # 12).

24                    **ALLEGATIONS OF THE COMPLAINT**

25     Plaintiffs, an organization and an individual with conservationist, aesthetic and

26 recreational interests in marine mammal protection, brought this action against Defendants

27 National Atmospheric Administration National Marine Fisheries Service (NMFS); Carlos M.

28 Gutierrez, Secretary of Commerce; James W. Balsiger, Acting Director of the NMFS; James

Lecky, Director of Office of Protected Resources at the NMFS (collectively "the Federal Defendants"); and Defendant City of San Diego.  In the second cause of action against the Federal Defendants,[1] Plaintiffs seek "judicial review of agency action under 5 U.S.C. § 702 to prevent the NOAA from ceding its authority to the City of San Diego to interpret and apply the Marine Mammal Protection Act."  (Doc. # 1 at 7).

Plaintiffs allege that the NMFS has taken the position that Section 109(h) of the Marine Mammal Protection Act (MMPA) which provides that the take prohibitions of the Act do not apply to local officials in the course of their official duties to protect the public health and remove nuisance animals, authorizes the City of San Diego to remove seals from the La Jolla Children's Pool Beach without a permit.  Plaintiffs allege in relevant part:

> On October 21, 2008, the City will appear in state court in the case *O'Sullivan v. City of San Diego,* San Diego Superior Court case number GIC826918, to defend itself against a motion requesting an order requiring the immediate dispersal of the already pregnant seals based upon a mandatory injunction requiring the City 'to employ all reasonable means to restore the Pool to its 1941 condition by removing the sand buildup and further to reduce the level of water contamination in the Pool to levels certified by the County of San Diego as being safe for humans.'. . .
>
> NMFS has taken the position that 16 USCS 1379(h), also referred to as Section 109(h) of the MMPA, authorizes the City to remove the seals from [Children's Pool Beach] without a permit.  Defendant James Lecky stated as much before the San Diego City Council on September 14, 2004, which was the entire basis for the state court's belief that it could order the dredging of [Children's Pool Beach] without running afoul of the MMPA, notwithstanding the fact that Mr. Lecky wrote a letter to the City just a year before making [] statements that completely contradicted that position. . . .
>
> On November 3, 2005, the Executive Director of the MMPA wrote a letter to Defendant Rodney McInnis questioning whether section 109(h) applies to this situation, and noting that this is a question of federal law that should not be left up to the City to determine. . . .
>
> Despite the City's previous representation that concerned parties would have an opportunity to be heard in a permitting process and that the seals would not be dispersed unless and until dredging can take place after the issuance of a Clean Water Act permit, there is an immediate threat that the state court will now order the seals to be dispersed on October 21, 2008 independent of the dredging process. . . .

---

[1]The first cause of action against only the Defendant City of San Diego seeks a "writ of mandate" requiring resolution of a substantial question of federal law, - whether the federal MMPA preempts enforcement of a city resolution requiring a rope barrier at the Children's Pool.  (Doc. # 1 at 4).

> Plaintiffs imminently need a declaration from this federal court as to whether exceptions to the MMPA allow the City to destroy the seal rookery without a permit without violating *federal* law.
>
> The federal requirements contained in the MMPA should be determined by a federal court, not by government bureaucrats who have made contradictory statements on the matter or by a state court cherry picking those statements, or by the City Attorney's office.  The necessity for correct interpretation and uniform application of federal law that Congress intended demands a federal forum for these issues.

(Doc. # 1 at 7-8, 17).  Plaintiffs seek a judgment against the Federal Defendants "requiring a MMPA permit to be issued prior to NMFS officials allowing the disturbance of seals at Children's Pool Beach." (*Id.* at 18).

## CONTENTIONS OF THE PARTIES

Federal Defendants contend that the Complaint against them must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(1) on the grounds that this Court lacks subject matter jurisdiction.  Federal Defendants contend that Plaintiffs have not identified a waiver of sovereign immunity or stated a cause of action that allows Plaintiffs to proceed against the them in federal court. Plaintiffs contend that the actions of the Federal Defendants are reviewable under the Administrative Procedures Act (APA) on the grounds that the challenged agency actions create legal consequences.  Plaintiffs contend that a formal decision has been made by the NMFS to allow the City of San Diego to actively disperse the seals at the Children's Pool under the Section 109(h) of the MMPA.

## APPLICABLE STANDARD

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  "In order for a plaintiff to bring a viable suit against the federal government or its agencies, the government must have waived its sovereign immunity. Consequently, a person attempting to sue a federal agency or officer must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States." *Weber v. Department of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008)(quotation omitted).  Subject matter jurisdiction must exist at the time the action is commenced and must be disclosed in the complaint.  *Morongo Band of Mission Indians v. California State Board*

*of Equalization,* 858 F.2d 1376, 1380 (9th Cir. 1988).  "If jurisdiction is lacking at the outset, the district court has 'no power to do anything with the case except dismiss.'" *Id*. quoting 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3844, at 332 (1986).

When assessing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the court assumes the truth of all allegations in the complaint. *Castaneda v. United States*, 546 F.3d 682, 684 n.1 (9th Cir. 2008).  Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  With a factual Rule 12(b)(1) attack, the court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. *Id.*

### DISCUSSION

The MMPA prohibits "taking" a marine mammal without a permit.  16 U.S.C. §§ 1372, 1374. "Taking" is defined in the MMPA as harassing, hunting, capturing, or killing a marine mammal, as well as attempting to do so. *Id.* § 1362(13), (18), 50 C.F.R. § 216.3.  Section 109(h) of the MMPA provides in relevant part: "Nothing in this subchapter . . . shall prevent a Federal, State, or local government official . . . from taking, in the course of his or her duties as an official . . . a marine mammal in a humane manner (including euthanasia) if such taking is for - (A) the protection or welfare of the mammal, (B) the protection of the public health and welfare, and (C) the nonlethal removal of nuisance animals." 16 U.S.C. §1379(h)(1).

Section 104(d)(6) of the MMPA provides that "[a]ny applicant for a permit, or any party opposed to such permit, may obtain judicial review of the terms and conditions of any permit issued by the Secretary under this section or of his refusal to issue such a permit."  16 U.S.C. § 1374(d)(6).  The MMPA does not otherwise provide a private right of action. *See Didrickson v. United States Department of Interior*, 982 F.2d 1332, 1338 (9th Cir. 1992); *see also, Cetacean Community v. Bush*, 386 F.3d 1169, 1178 (9th Cir. 2004) ("[T]he MMPA contains no explicit provision granting standing to enforce its duties.").  The allegations of Plaintiffs' complaint in this case do not involve the grant or denial of an application under Section 104(d) of the MMPA.  In order to proceed with their claim against the Federal

Defendants, Plaintiffs must establish waiver of sovereign immunity under the APA. 5 U.S.C. §§ 702, 704; *see Rattlesnake Coalition v. U.S. Environmental Protection Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007). The APA permits a citizen suit against an agency when an individual has suffered "a legal wrong because of an agency action" or has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. When a claim is brought pursuant the APA, there must be "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704.

I. Agency Discretionary under Section 701

Federal Defendants contend that NMFS enforcement decisions under the MMPA are committed to agency discretion and immune from judicial review under Section 701(a)(2) of the APA. Federal Defendants contend that Plaintiffs would not be entitled to any review of a decision by the NMFS not to take enforcement action to require the City of San Diego to obtain a permit before complying with the state court order, even assuming that the NMFS had made such a final decision. Federal Defendants assert that Plaintiffs cannot identify any provision of the MMPA that circumscribes the discretion of the NMFS to determine how and when the agency may exercise its enforcement authority.

Plaintiffs contend that the general exception to reviewability for actions "committed to agency discretion" under Section 701(a)(2) is a narrow one. Plaintiffs assert that the NMFS has an affirmative duty under 16 U.S.C. § 1371(3)(A) to consult with the Marine Mammal Commission (MMC) in determining when to waive the requirements of the MMPA, and that the NMFS has "disregarded the advice of the MMC and waived the requirement that the City abide by the MMPA if the state court orders it to destroy a NMFS recognized rookery." (Doc.# 23 at 9). Plaintiffs assert that the failure of the NMFS to abide by the MMPA is subject to review under the APA.

Section 701(a) provides that judicial review under the APA "[a]pplies, according to the provisions thereof, except to the extent that (1) statutes preclude review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. §701(a). In *Heckler v. Chaney*, 470 U.S. 821 (1985), the United States Supreme Court explained that "[t]he APA's comprehensive

provisions for judicial review of 'agency actions,' are contained in 5 U.S.C. §§ 701-706.  Any person 'adversely affected or aggrieved' by agency action; see § 702, including a 'failure to act,' is entitled to 'judicial review thereof,' as long as the action is a 'final agency action for which there is no other adequate remedy in a court,'  see § 704.  The standards to be applied on review are governed by the provisions of § 706.  But before any review at all may be had, a party must first clear the hurdle of § 701(a)."  470 U.S. at 828.  In *Heckler,* plaintiffs prison inmates sentenced to death by lethal injection of drugs, brought an action to compel the Food and Drug Administration to take enforcement action to prevent violations of the federal Food, Drug and Cosmetics Act.  The Supreme Court concluded that

> . . . an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2).  For good reason, such a decision has traditionally been 'committed to agency discretion,' and we believe that the Congress enacting the APA did not intend to alter that tradition. . . .  In so stating, we emphasize that the decision is only presumptively unreviewable: the presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers.

470 U.S. at 832 (citation omitted).

As recently as *Salmon Spawning & Recovery Alliance v. United States Customs and Border Protection*, 550 F.3d 1121 (9th Cir. 2008), the Court of Appeals stated that "[t]he Supreme Court recognized in *Heckler v. Chaney,*[] that 'an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion.' (citation omitted).  Accordingly, an agency's decision not to undertake enforcement actions is 'presumptively unreviewable' under the APA." 550 F.3d at 1128 (quoting *Heckler*, 470 U.S. at 832); *see also Big Country Foods, Inc. v. Board of Education*, 952 F.2d 1173, 1176 (9th Cir. 1992) ("An agency's decision not to take enforcement action should be presumed immune from judicial review."); *Alaska Fish and Wildlife Federation v. Dunkle*, 829 F.2d 933, 938 (9th Cir. 1987) ("Failure of an agency to prosecute is presumptively not reviewable under the APA").   The presumption of unreviewability may be rebutted "where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers."  *Heckler,* 470 U.S. at 833. "Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive

priorities, or by otherwise circumscribing an agency's powers to discriminate among issues or cases it will pursue." *Id.* "If [Congress] has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion, there is 'law to apply' under § 701(a)(2), and courts may require that the agency follow the law; if it has not, then an agency refusal to institute proceedings is a decision 'committed to agency discretion by law' within the meaning of that section." *Id.* at 834-35.

The MMPA commits the discretion to regulate the taking of marine mammals to the Secretary of Commerce.  Section 107(a) of the MMPA provides: "Except as otherwise provided in this subchapter, the Secretary shall enforce the provisions of this subchapter."  16 U.S.C. § 1377(a).  The MMPA provides that "[t]he Secretary may issue permits which authorize the taking or importation of any marine mammal."  16 U.S.C. § 1374(a).  The MMPA provides that the Secretary "may modify, suspend or revoke in whole or in part any permit issued []under this section."  16 U.S.C. § 1374(e)(1).  The MMPA provides that "[a]ny person who violates any provision of this subchapter . . .  may be assessed a civil penalty by the Secretary . . .".  16 U.S.C. § 1375(a)(1).   The MMPA provides that "[a]ny person authorized by the Secretary to enforce this subchapter may . . . arrest any person committing in his presence or view a violation of this subchapter . . .".  16 U.S.C. § 1377(d)(1).

Plaintiffs rely upon 16 U.S.C. § 1371(3)(A), which provides in part that "[t]he Secretary, on the basis of the best scientific evidence available and in consultation with the Marine Mammal Commission, is authorized and directed, from time to time, having due regard to the distribution, abundance, breeding habits, and times and lines of migratory movements of such marine mammals, to determine when, to what extent, if at all, and by what means, it is compatible with this chapter to waive the requirements of this section so as to allow taking, or importing of any mammal, or any marine mammal product, and to adopt suitable regulations, issue permits, and make determinations . . ." 16 U.S.C. § 1371(3)(A).  Plaintiffs contend that 16 U.S.C. § 1371(3)(A) places a mandatory duty upon the NMFS subject to review under the APA.  Plaintiffs assert that "[i]t is not within the discretion of the National Marine Fisheries Service to affirmatively authorize and ratify the intentional and constant

1  chasing of hundreds of seals out of a rookery without a permit, against the better judgment of

2  its own lead biologists and the MMC."  (Doc. # 23 at 10).

3      The Court concludes that the discretionary enforcement language of the MMPA does

4  not circumscribe the agencies' "power to discriminate among issues or cases it will pursue."

5  *Heckler,* 470 U.S. 833;  *see also Salmon Spawning & Recovery Alliance  v. United States*, 532

6  F.3d 1338, 1346 (Fed. Cir. 2008) (presumption of unreviewability not rebutted under section

7  9 of the Endangered Species Act where "statute makes clear the discretionary nature of the

8  defendants' enforcement powers.").  There is no basis upon which to conclude that Section

9  1371(3)(A) limits the Secretary's discretion to determine how and when to enforce the MMPA.

10  The Complaint in this case does not identify any discrete action that the Federal Defendants

11  have failed to take or that the Federal Defendants are required to take under Section

12  1371(3)(A). Plaintiffs have not identified any portion of the MMPA which provides guidelines

13  for the agency to follow in exercising the enforcement powers.  No provision of the MMPA

14  sets substantive priorities or otherwise circumscribes the power of the Secretary to determine

15  how and when to enforce the statute. The Court concludes that the presumption of

16  unreviewability under Section 701(a)(2) of the APA applies in this case to preclude judicial

17  review of the allegations against the Federal Defendants in the Complaint.

18  II.  Final Agency Action under Section 704

19      Even if the actions described in the Complaint are not immune under Section 701 of

20  the APA, the Federal Defendants contend that this Court lacks subject matter jurisdiction

21  because the Complaint does not challenge a final agency action as required under Section 704

22  of the APA.  Federal Defendants contend that the facts alleged in the Complaint support only

23  an inference that the NMFS has advised the City of its options under the MMPA to either

24  disperse the seals pursuant to Section 109(h) if the City determines that one or more of the

25  conditions specified in the statute exist, or to apply for incidental harassment authority.

26  Federal Defendants assert that these allegations cannot satisfy the requirements of a final

27  agency action reviewable under the APA.

28      Plaintiffs contend that officials of the NMFS have taken affirmative steps which can be

reviewed as final agency action under APA.  Plaintiffs explain that the Federal Defendants have taken an active role in affirmatively ratifying and approving a threatened violation of the MMPA, specifically identified in the Complaint as statements made by James Lecky on behalf of the NMFS at a City Council meeting on September 14, 2004.  Plaintiffs contend that the affirmative action by this representative of the Federal Defendants constitutes final agency action reviewable under the APA.  Plaintiffs assert that the position of the Federal Defendants that the City of San Diego may disperse the seals pursuant Section 109(h) if the City determines that one or more of the conditions specified in the statute exists at the Children's Pool Beach has "direct legal consequences" and is reviewable under the APA.  (Doc. # 49 at page 3).

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "When . . . review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 882 (1990) (quoting 5 U.S.C. § 704).  "[A]gency action" is defined in § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  "All of those categories involve circumscribed, discrete agency actions, as their definitions make clear. . ."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) .

"[A]n agency action must be final in order to be judicially reviewable."  *National Association of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005); *see also Indep. Petroleum Ass'n of Am. v. Babbitt*, 235 F. 3d 588, 594 (D.C.Cir. 2001) ("[T]he requirement of a final agency action is considered jurisdictional.  If the agency action is not final, the court ... cannot reach the merits of the dispute.").  In *Fairbanks North Star Borough v. U.S. Army Corps of Engineers*, 543 F.3d 586 (9th Cir. 2008), the Court of Appeals held that the issuance of an approved jurisdictional determination by the Army Corps of Engineers finding that the Plaintiff's property contained waters of the United States did not constitute final agency action

under the APA for purposes of judicial review.  The Court explained: "As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process - it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  543 F.3d at 591 (quoting *Bennett v. Spear,* 520 U.S. 154, 177-78 (1997)).   The Court found that "[t]he approved jurisdictional determination represented the Corps' definitive administrative position that [Plaintiff's] property contained wetlands," but concluded that "it did not 'impose an obligation, deny a right, or fix some legal relationship.'" 543 F.3d at 591 (quoting *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990)).   The Court  explained that "Fairbanks rights and obligations remained unchanged by the approved jurisdictional determination.  It does not command Fairbanks to do or forbear from anything; as a bare statement of the agency's opinion, it can be neither the subject of immediate compliance or of defiance."  543 F.3d at 593-94 (quotations omitted).   "Because finality is a jurisdictional requirement to obtaining judicial review under the APA," the Court of Appeals affirmed the dismissal of the action.  *Id.* at 591.

The Complaint in this case alleges that "NMFS has taken the position that 16 USCS 1379(h), also referred to as Section 109(h) of the MMPA, authorizes the City to remove the seals from [Children's Pool Beach] without a permit.  Defendant James Lecky stated as much before the San Diego City Council on September 14, 2004, which was the entire basis for the state court's belief that it could order the dredging of [Children's Pool Beach] without running afoul of the MMPA, notwithstanding the fact that Mr. Lecky wrote a letter to the City just a year before making [] statements that completely contradicted that position."  (Doc. # 1 at 8).  At the September 14, 2004 City Council meeting, Lecky, the Assistant Regional Director for the NMFS Southwest Region, explained Section 109(h) to the City Council in part as follows:

> The tools that are available to the City and other local government agencies really reside in §109(h).   And §109(h) of the statute allows local city government agencies and their employees to 'take' marine mammals. 'Take' is defined as harass, harm, hunt, or kill - the limitations under 109(h) are that it's non-lethal, for the most part, there is an exception for euthanasia.  But in this circumstance we are really talking about moving animals through the use of

1
2
3
4
5

harassment.  And animals can be moved out of an area if they are presenting a public nuisance or they're causing a public health hazard.  So, it's up to the City to decide whether the water quality problem is considered a public health hazard they want to deal with or whether the ongoing conflicts on this beach are presenting a public nuisance that they want to resolve.  109(h) is an authority that is granted to local governments and state agencies and it doesn't require approval or permit from the federal agency.  So it's up to the local entities to use 109(h), and hence, that's the rationale when I say it's a local government issue – the federal government is not going to weigh in and say that you can or can't use 109(h) as a rationale for managing the situation at the Children's Pool.

6
7

(Doc. # 41, Supplemental Declaration of McArdle, Exhibit A, Pages 4-5).[2]  Lecky further

8

explained to the City Council that the MMPA authorizes the City to seek incidental harassment

9

authority from the NMFS which would be another exception to the prohibition on "take" for

10

incidental harassment during a proposed dredging process.  (*Id.* at 5).

11

The Court concludes that the comments made by Lecky at the City Council meeting do

12

not satisfy the requirements for a final agency action reviewable under the APA.  Lecky's

13

comments were "tentative and interlocutory in nature." *Bennett*, 520 U.S. at 177.  As alleged

14

in the Complaint, Lecky had stated an opinion in a letter dated February 11, 2003 attached to

15

the Complaint which was not consistent with his September 14, 2004 comments.  ("The

16

National Marine Fisheries Service . . . has determined that Section 109(h) does not apply to

17

pinnipeds (seals and sea lions) on haulouts and rookeries, as these animals are not a threat to

18

themselves or the general public and are not considered to be nuisance animals.  Therefore, the

19

City of San Diego may not initiate any actions that would result in a permanent impact to the

20

harbor seals at [Children's Pool Beach]." (Doc #1, Exhibit J).  Plaintiffs argue that the fact

21

Lecky stated a contrary opinion at an earlier time supports the conclusion that the September

22

14, 2004 comments represented a reviewable final agency action.  However, this Court

23

concludes that Lecky's September 14, 2004 comments and Lecky's February 11, 2003 letter

24

indicate that Lecky was no more than a "subordinate agency official," and that Lecky's

25

September 14, 2004 comments did not mark the consummation of any agency decision making

26

process.  *Stauffer Chemical Company v. Food & Drug Administration*, 670 F.2d 106, 108 (9th

27
28

---

[2]The Court  considers the transcript of Lecky's remarks contained in the record of this case at Doc. 41, Exhibit A without converting this attack on jurisdiction to a summary judgment.  Lecky's remarks are specifically referenced and relied upon in the Complaint, a matter of public record, and undisputed by the parties. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

Cir. 1982) ("In general, action by subordinate agency officials is not final agency action subject to judicial review.").   More importantly, Lecky's September 14, 2004 comments did no more than explain the nature of Section 109(h) and inform that City officials that it would be up to them to decide whether the requirements of Section 109(h) were met.   Lecky stated "the federal government is not going to weigh in and say that you can or can't use 109(h) as a rationale for managing the situation at the Children's Pool." (Doc. # 41 at 5).   Lecky's remarks "did not impose an obligation, deny a right, or fix some legal relationship." *Fairbanks North Star Borough*, 543 F.3d at 591.   The obligations and rights of the City of San Diego remained unchanged by Lecky's comments.

Plaintiffs argue that the practical effect of the reference by the state court to Lecky's comments in the decision in *O'Sullivan v. City of San Diego,* San Diego Superior Court case number GIC826918*,* changed Lecky's September 14, 2004 comments into final agency action reviewable under the APA.   Plaintiffs assert that the state court used Lecky's comments to "unilaterally declar[e] the City's obligation to immediately disperse the seals without securing a permit." (Doc. # 49 at 5).   Even assuming that the state court relied upon Lecky's comments as if they represented a final agency decision, this reliance would not convert Lecky's comments into final agency actions reviewable under the APA or convert any adverse affect caused by the state court order into federal agency action. This Court concludes that the comments by Lecky on September 14, 2004 alleged in the Complaint do not constitute a final agency action under the APA for purposes of judicial review.[3]

Finally, the decision in *City of Sausalito v. O'Neill,*[4] does not change the conclusion that the Complaint in this case does not allege facts to support judicial review.   In *City of Sausalito*, Plaintiff City of Sausalito challenged "a final [environmental impact statement]" selecting one of four alternatives for developing Fort Baker referred to as the "Fort Baker Plan." 386 F.3d at 1195.   The City of Sausalito asserted that the implementation of the Fort Baker Plan by the

---

[3]Plaintiffs refer to a 2005 McInnis letter and a 2008 e-mail from a NMFS biologist in their briefing on final agency action.   Neither the McInnis letter nor the e-mail are referenced in the Complaint as final agency action or constitute any final agency action under Section 704.

[4] 386 F.3d 1186 (9th Cir. 2003).

United States Parks Service would cause the taking of seal lions and harbor seals and that the Park Service was required to obtain a permit under the MMPA.   The Court of Appeals found that the City of Sausalito had standing to sue to require the Park Service to apply for an permit before implementing the Fort Baker Plan.  The Court explained that "[i]mplementation of the MMPA would be severely hampered if affected parties with conservationist, aesthetic, recreational, or economic interests in marine mammal protection were not allowed to bring suits challenging failures to apply for required permits.  We believe that under the most reasonable interpretation of the 'zone of interests' test, as liberally construed by the Court in *Clarke* [*v. Secs. Indus. Ass'n*, 479 U.S. 388, 107 S.Ct. 750 (1987)], standing would be to any party who would be 'adversely affected or aggrieved' by the failure of a party to procure a permit that is required under the MMPA."  389 F.3d at 1203 (quoting 5 U.S.C. § 702).  In *City of Sausalito*, the plaintiff challenged a final agency action - a final environmental impact statement.   There was no dispute over the finality of the agency action or the legal consequences of the agency action.   The Court of Appeals concluded that Plaintiffs had standing to challenge a final agency action in which a party failed to procure a permit "that is required under the MMPA." *Id.*

Unlike *City of Sausalito*, the allegations of the Complaint in this case do not support a final agency action or a permit required under the MMPA.  This Court concludes that there are no allegations in the Complaint which support the inference of a final agency action by the NMFS reviewable under Section 704 of the APA.

/ / /

**CONCLUSION**

This Court concludes that there are no facts alleged in the Complaint which support judicial review of the second claim for relief under the APA.  This Court has no jurisdiction to proceed against the Federal Defendants.  IT IS HEREBY ORDERED that the motion to dismiss the Complaint for lack of subject matter jurisdiction filed by Federal Defendants (Doc. # 12) is granted.  Plaintiffs and Defendant City of San Diego are ordered to file briefs addressing the jurisdiction of this Court to proceed on the merits of the first claim for relief within 30 days of the date of this order.

DATED:  April 28, 2009

*William Q. Hayes*

**WILLIAM Q. HAYES**
United States District Judge